UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

SENCERE    JONES;    JANICE    JONES;    ERICA    JONES,
INDIVIDUALLY AND ON BEHALF OF INFANT D.J. AND
INFANT I.J. AS THEIR MOTHER AND NATURAL GUARDIAN;
CIERA MCGEE, INDIVIDUALLY AND ON BEHALF OF INFANT
S.M. AS HIS MOTHER AND NATURAL GUARDIAN; and INFANT
J.S. BY HER FATHER AND NATURAL GUARDIAN ELIJAH
SHABAZZ,

                                      Plaintiffs,

             -against-

THE CITY OF NEW YORK; MAYOR OF THE CITY OF NEW
YORK ERIC ADAMS; POLICE COMMISSIONER FOR THE CITY
OF NEW YORK KEECHANT SEWELL; NEW YORK CITY
POLICE DEPARTMENT MEMBERS JOHN DOE # 1-10,

                                  Defendants.

-------------------------------------------------------------------------------X

Case No.:

**VERIFIED
COMPLAINT**

**PLAINTIFFS DEMAND
A TRIAL BY JURY**

Plaintiffs SENCERE JONES, JANICE JONES, ERICA JONES, individually and for

INFANT PLAINTIFFS D.J. and I.J., CIERA MCGEE, individually and for INFANT PLAINTIFF

S.M., and ELIJAH SHABAZZ for INFANT PLAINTIFF J.S., by their attorney, MARYANNE K.

KAISHIAN, an attorney with KAISHIAN & MORTAZAVI LLC duly authorized to practice

before this Court, hereby complain of Defendants as follows:

**PRELIMINARY STATEMENT**

1.      Plaintiff Sencere Jones (he/they) is a college student at the State University of New

York at Buffalo, where they were the first ever recipient of the George Floyd Scholarship for their

work advancing racial equity and social justice.[1] Shortly after returning to their family home in

---

[1] *See* I'Jaz Eberhardt, *Buffalo State Names First Recipient of George Floyd Memorial Scholarship*. BUFFALO STATE
NEWS, Oct. 6, 2020, *available at* https://suny.buffalostate.edu/news/buffalo-state-names-first-recipient-george-
floyd-memorial-scholarship (last visited Sept. 5, 2023) ("Sencere Jones's dedication to social justice in general and
to fighting racial inequities in health care specifically was very impressive," [Buffalo State Chief Diversity Officer
Crystal] Rodriguez said. "In his scholarship application essay, he demonstrated maturity and compassion. He is
concerned that the lack of representation in the health-care system is posing a real danger to patients of color.").

New York County for summer break, on or about June 3, 2022, Sencere Jones and four generations of their family were subjected to a brutal and abusive raid by members of the New York City Police Department (NYPD). During this raid, NYPD Does made homophobic and misgendering remarks about Sencere Jones, falsely arrested them, and violated the rights of all Plaintiffs, resulting in lasting physical and emotional trauma. All charges against Sencere Jones were dismissed on September 22, 2022.

## PARTIES

2.      At all times mentioned herein, adult Plaintiffs SENCERE JONES, CIERA MCGEE, and ERICA JONES were residents of New York County in the City and State of New York. Plaintiff JANICE JONES is a resident of Baltimore, Maryland, and was enjoying a long-term visit with her children, grandchildren, and great-grandchildren at the time of the incidents giving rise to this Complaint.

3.      The location of the incident, the family's apartment in the City, County, and State of New York, was a home for Plaintiffs' nuclear and extended family. Plaintiff Janice Jones is the mother of Plaintiff Erica Jones. Plaintiff Erica Jones is the mother of Plaintiffs Sencere Jones, Ciera McGee, D.J., and I.J, and the grandmother of Plaintiff Infant J.S. Plaintiff Ciera McGee is the mother of Infant Plaintiff S.M.

4.      ERICA JONES brings the instant claims for herself individually and on behalf of Infant Plaintiff I.J. and Infant Plaintiff D.J., children under the age of 16, as their mother and natural guardian.

5.      CIERA MCGEE brings the instant claims for herself individually and on behalf of Infant Plaintiff S.M., a child under the age of 16, as his mother and natural guardian.

6.      ELIJAH SHABAZZ brings the instant claims on behalf of infant J.S., a child under the age of 16, as her father and natural guardian.

7.     At all relevant times mentioned herein, Defendant City of New York ("Defendant City" or "New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

8.     Defendant New York City Mayor ERIC ADAMS was at all times relevant to this Complaint the Mayor of New York City. As Mayor, Defendant Adams, at all relevant times, was an elected officer and the "chief executive officer of the city," New York City Charter § 3, and had final authority to appoint and/or remove any NYPD employees and agent, including the New York City Police Commissioner. He is sued individually and in his official capacity.

9.     Defendant NYPD Commissioner KEECHANT SEWELL was at all times relevant to this Complaint the Police Commissioner of the NYPD. As Police Commissioner, Defendant Sewell, personally and/or through her authorized delegates, at all relevant times had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures as to personnel hiring, training, supervision, and discipline with respect to NYPD officers' performance of their duties, and constituted a City policymaker for whom the City is liable. She is sued individually and in her official capacity.

10.    The true names and identities of the NYPD Member Defendants John Doe #1-10 are currently unknown to Plaintiffs. They are referred to herein collectively as "Defendant Does." At all times hereinafter mentioned, these Defendant NYPD Does were employed by the City of New York as members of the NYPD.

11.    At all times hereinafter mentioned, all individual Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official

rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

12.     Each and every act and omission by the individual Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by the Defendant City.

13.     The individual Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, on behalf of, and with the power and authority vested in them by Defendant City and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

14.     All Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

15.     At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

16.     Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendant NYPD Does, or any other member of the NYPD, take any steps to intervene in,

17.     Each individual Defendant is sued in her or his individual and official capacities.

18.     Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendants, or any other member of the

NYPD, take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellow officers.

19.     Each individual Defendant is sued in her or his individual and official capacities.

**JURISDICTION, VENUE, and GML COMPLIANCE**

20.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1367 and 1367, and 42 U.S.C. § 1983.

21.     Venue is proper pursuant to 28 U.S.C. § 1391, *et seq.*, in the Southern District of New York, where the actions complained of herein occurred.

22.     Plaintiffs timely served Notices of Claim on the municipal Defendant on and complied with all conditions precedent to commencing an action under state law.

23.     Plaintiff Sencere Jones was falsely arrested and released after spending approximately eight (8) hours in NYPD custody with a Desk Appearance Ticket mandating their return to Court on or about June 22, 2022, at which time the legal proceedings against Plaintiff Sencere Jones were initiated.  No other family members were arrested.

24.     The case against Plaintiff Sencere Jones was dismissed on or about September 22, 2022.

25.     Plaintiffs were examined by the Defendant City of New York pursuant to GML §50-H during examinations held on January 5, 2023, and January 6, 2023.

26.     At least thirty days have elapsed since service of Plaintiff's Notices of Claim and adjustment and payment thereof has been neglected or refused.

27.     This action was initiated within one year and ninety days of the accrual of Plaintiffs' claims pursuant to New York State Law and within three years of accrual of Plaintiffs' applicable Federal claims.

## BACKGROUND

## NYPD TREATMENT OF LGBTQIA+ NEW YORKERS

28.     Members of the NYPD have repeatedly engaged in gender- and sex-based misconduct, violence, and harassment of civilians.[2] This misconduct and violence can be physical and/or verbal and is part of an ongoing refusal on the part of the Department to meaningfully address any of the issues repeatedly raised publicly regarding this abuse by NYPD members.

29.     The Defendants have been on notice about gender-based and sexually-based misconduct by NYPD members and the need for training and discipline around these harms for years, but have failed to address these issues in any meaningful way. In fact, as in the case of Assistant Chief of NYPD Christopher McCormack, members who are accused of such misconduct often rise through the ranks.[3] McCormack has been accused by more than a dozen people of humiliating and abusive sexual conduct, including public strip searches and forcibly inserting his fingers into their anal cavities during legally prohibited "searches."[4]

30.     In 2012, the NYPD was forced to add provisions to its Patrol Guide specifically outlining rules for the treatment of transgender and/or nonbinary people such as Plaintiff Sencere Jones.

---

[2] *See* Joshua Kaplan & Joaquin Sapien, *NYPD Cops Cash in on Sex Trade Arrests with Little Evidence, While Black and Brown New Yorkers Pay the Price*, PROPUBLICA, Dec. 7, 2020, *available at*: https://www.propublica.org/article/nypd-cops-cash-in-on-sex-trade-arrests-with-little-evidence-while-black-and-brown-new-yorkers-pay-the-price; *see also* Joaquin Sapien, Topher Sanders & Nate Schweber, *Over a Dozen Black and Latino Men Accused a Cop of Humiliating, Invasive Strip Searches. The NYPD Kept Promoting Him*. PROPUBLICA, Sept. 10, 2020, *available at:* propublica.org/article/over-a-dozen-black-and-latino-men-accused-a-cop-of-humiliating-invasive-strip-searches-the-nypd-kept-promoting-him; Natasha Lennard, *In Secretive Hearing, NYPD Cops Who Raped Brooklyn Teen in Custody Get No Jail Time*, THE INTERCEPT, August 30, 2019, available at: https://theintercept.com/2019/08/30/nypd-anna-chambers-rape-probation/.

[3] *See* Joaquin Sapein, Topher Sanders & Nate Schweber, *Over a Dozen Black and Latino Men Accused a Cop of Humiliating, Invasive Strip Searches. The NYPD Kept Promoting Him*. PROPUBLICA, Sept. 10, 2020, *available at:* propublica.org/article/over-a-dozen-black-and-latino-men-accused-a-cop-of-humiliating-invasive-strip-searches-the-nypd-kept-promoting-him

[4] *Id*.b

31.     However, in a November 2017 report, Review of NYPD's Implementation of Patrol Guide Procedures Concerning Transgender and Gender Nonconforming People, the NYC Department of Investigation (DOI) found "clear gaps in NYPD's implementation of and training on the revisions" to the Patrol Guide made in 2012 to establish standards for the treatment of transgender and gender nonconforming people.[5] Consistent with the studies and reports cited in previous paragraphs, the DOI investigation uncovered reports of "officers ignoring preferred names and gender identities, using slurs related to gender identity . . . and refusing to take crime reports from transgender and gender nonconforming individuals."[6] Transgender and nonbinary "people of color in particular reported feeling targeted."

32.     The investigation also revealed that the NYPD failed to train many members of the police force on the Patrol Guide revisions, and that it "has not explained to all officers why the changes were necessary or that they specifically apply to [transgender] people." The report characterized the "reach and impact" of NYPD's in-service training as "inadequate" and found that, over a period of four years analyzed, "only six of NYPD's 77 precincts received" that training.

33.     In addition to inadequate trainings, the report identified additional inadequate policies and practices for ensuring that NYPD officers respect LGBTQIA+ people's rights. With an entire section of the report devoted to how inadequate forms contribute to the continued problem of misgendering and misnaming, the report concluded that "the policies and instructions on recording preferred names do not conform to the spirit of the 2012 Patrol Guide revisions." In

---

[5] See National Coalition of Anti-Violence Programs, LESBIAN, GAY, BISEXUAL, TRANSGENDER, QUEER, AND HIV-AFFECTED HATE VIOLENCE IN 2016 at 67 (2017), available at http://avp.org/wpcontent/uploads/2017/06/NCAVP_2016HateViolence_REPORT.pdf. 13 Id. 14 See New York City Civilian Complaint Review Board, PRIDE, PREJUDICE AND POLICING: An Evaluation of LGBTQ-Related Complaints from January 2010 through December 2015 at 4 (2016), available at https://www1.nyc.gov/assets/ccrb/downloads/pdf/policy_pdf/issue_based/20160630_lgbtq-report.pdf. 15 Id. at 6. 16 Available at https://www1.nyc.gov/assets/doi/press-releases/2017/nov/31_LGBTQ_ReportRelease_112117.pdf.
[6] Id.

addition, the report highlighted the ways that an inadequate complaint process exacerbates the problem, since the "NYPD's handling of complaints . . . makes it difficult for [it] to determine patterns or trends that, if addressed, could lead to greater police accountability and ensure compliance with the Patrol Guide revisions."

34.    In 2018, The New York City Council introduced a host of bills that mandated sexual sensitivity and assault investigation training for members of the NYPD in the wake of information about the Department's treatment of sexual assault victims.[7] However, at a Council hearing in 2021, it was clear that these issues persisted.[8]

35.    In 2018, the Civilian Complaint Review Board (CCRB) announced that the scope of the problem of sexual misconduct including assault by members of the NYPD necessitated an expansion of CCRB rules to allow the independent oversight agency to investigate such complaints, and the CCRB Board adopted this change by unanimous vote in February 2018.[9] For decades the CCRB had referred all sexual misconduct cases to the NYPD's Internal Affairs Bureau (IAB), requiring victims of NYPD-related sexual abuse to interface entirely with the NYPD itself, and no information about any investigations, discipline, or outcomes were made public.

36.    The NYPD's Patrolmen's (also Police) Benevolent Association moved to block this CCRB expansion.[10] Ultimately, after reintroducing the proposed rules in a manner consistent with the First Department's holding in *Lynch v Civilian Complaint Review Board*,[11] the agency

---

[7] *See* New York City Council (October 18, 2021) *Joint Hearing with Women and Equity and Public Safety*, minutes and video available at: https://legistar.council.nyc.gov/MeetingDetail.aspx?ID=896997&GUID=54E40D2E-C083-4B1B-AB17-1328C10A783E&Search=; *see* John del Signore, *NYPD Cop Accused of Groping His "Favorite Rape Victim,"* GOTHAMIST, January 16, 2015, *available at*: https://gothamist.com/news/nypd-cop-accused-of-groping-his-favorite-rape-victim.
[8] *Id*.
[9] New York City Civilian Complaint Review Board, NYC Civilian Complaint Review Board Votes Unanimously to Investigate Allegations of NYPD Sexual Misconduct, via Press Release (February 15, 2018) available at https://www1.nyc.gov/assets/ccrb/downloads/pdf/about_pdf/news/pressreleases/2018/20181502_boardmtg_sexualmisconduct_release.pdf
[10] *Matter of Lynch v New York City Civilian Complaint Review Bd.*, 2020 NY Slip Op 03062 (1st Dept 2020).
[11] *Id*.

officially undertook these investigations December 2020. Plaintiffs incorporate by reference the information contained in the Civilian Complaint Review Board's data regarding the agency's investigations.[12]

37.     According to information provided at the CCRB's public Board Meeting on December 8, 2021, between the time investigations were initiated and the presentation at the December 8th meeting, the CCRB had received 233 complaints within its jurisdiction that included 335 allegations of sexual misconduct by members of the NYPD, and had referred 384 sexual misconduct cases to the IAB and District Attorneys for potential employment and criminal actions.[13] Of these referred cases, 266 were considered "Phase II," meaning they involved serious misconduct such as sexual assault and groping a person over their clothing.[14] Using homophobic language is grounds for CCRB complaints.

38.     At a public Board Meeting on September 9, 2020, CCRB Chair Fred Davies specifically stated that the agency "continues to receive complaints of NYPD's officers misgendering and belittling the civilians with homophobic slurs."[15] Chair Davies went on: "And we know that some New Yorkers, fueled by this very fear and pain, have called for removing the NYPD from queer spaces, like Pride, altogether. And one year after Layleen Polanco's death—tragic death—on Rikers Island, after rising violence against Black trans women nationwide, we

---

[12] New York City Civilian Complaint Review Board (December 8, 2021) *December 8, 2021 Public Board Meeting*, minutes available at:
https://www1.nyc.gov/assets/ccrb/downloads/pdf/about_pdf/board/2021/Minutes/12082021_boardmtg_minutes.pdf
[13] December 8, 2021 CCRB Meeting Minutes at 25.
[14] New York City Civilian Complaint Review Board, *Memorandum Accompanying Public Vote* (February 14, 2018) available at:
https://www1.nyc.gov/assets/ccrb/downloads/pdf/policy_pdf/20181402_boardmtg_sexualmisconduct_memo.pdf
[15] New York City Civilian Complaint Review Board (September 9, 2021) *September 9, 2021 Public Board Meeting*, Meeting Minutes at 11, minutes available at:
https://www1.nyc.gov/assets/ccrb/downloads/pdf/about_pdf/board/2020-meeting-minutes/20200909_boardmtg_minutes.pdf

come to this evenings conversation knowing that in talking about NYPD/LGBTQIA relations we're only scratching the surface in the conversation about the community's concerns."[16]

39.     At that same September 9, 2020, public meeting, Deborah Lolai, Supervising Attorney for the LGBT Defense Project at the Bronx Defenders, testified: "Our office has represented hundreds of LGBT people in criminal cases. The NYPD has a record of abusing LGBT New Yorkers and, particularly, transgender, gender nonconforming, intersex and nonbinary people throughout history, which is a part of the reason CCRB collects this specific data. As of a result of this pattern of abuse, the NYPD Patrol Guide was revised in 2012 to include protection for transgender people, specifically, who are arrested. Those revisions required the NYPD to offer most basic dignity to transgender people. For example, it requires that they respect people's names and pronouns, that they place them in holding cells consistent with their gender identity, it requires that they refrain from harassing them or using derogatory language towards them. But… I'm here to set the record straight about what happens on the ground in real life. **Out of the hundreds of transgender clients I have represented in criminal cases, there has not been one client whose arrest and treatment by the involved officer complied with these 2012 revisions**."[17]

40.     For example, in 2019, the New York Civil Liberties Union and Make the Road filed suit on behalf of Linda Dominguez, a transgender woman who was targeted for arrest by the NYPD while walking home and repeatedly misgendered while in police custody in 2018. *Dominguez v. City of New York et al.*, Index No. 020841/2019E (Bronx Co.) (2019).  Ms. Dominguez was also charged with false personation by the NYPD for using her true name rather than her deadname.

41.     As part of the 2020 settlement agreement in *Dominguez*, the NYPD was to retrain its officers on the 2012 Patrol Guide provisions. A statement from the Law Department claimed:

---

[16] *Id*.
[17] *Id*. at 79-80 (emphasis added).

"The steps the NYPD will take in connection with this settlement reaffirm the Department's ongoing commitment to improving relations between the police and communities officers serve."[18]

42.     In another case, the Defendants City and NYPD were again sued for repeatedly misgendering Jamel Young, a transgender man who uses he/him pronouns, and abusing him because of his identity while he was in custody in 2019.[19]

43.     The NYPD has a well-documented history of intentionally misgendering even criminalizing the use of chosen names by gender nonconforming and transgender people. This and other abusive conduct by police are particularly directed at Black and brown trans, GNC, nonbinary, and queer people. Misgendering a person is a hostile, insulting, diminishing, and threatening act, and only more so in the context of power dynamics as radically different as those between a police officer and a person in their custody.

44.     Courts have recognized misgendering as a serious violation, and "courts addressing the issue have almost uniformly found the practice hostile, objectively offensive, and degrading." *See, Stanley v. City of N.Y.*, 71 Misc. 3d 171, 184 n.5 (N.Y. Cty. Sup. Ct. 2020), *citing*, *Doe v City of New York*, 42 Misc. 3d 502, 976 NYS2d 360, 364 (N.Y. Cty.Sup.Ct.2013) (misgendering is "not a light matter, but one which is laden with discriminatory intent").

45.     However, Defendants have allowed a culture of gender and sex-based abuse to persist.

## STATEMENT OF FACTS

---

[18] *See* Yasmine Khan, *NYPD Agrees to Settle Discrimination Lawsuit Brought By A Transgender Latina*, GOTHAMIST, November 12, 2020, available at https://gothamist.com/news/nypd-agrees-settle-discrimination-lawsuit-brought-transgender-latina.

[19] *See* Clarissa-Jan Lim, BUZZFEED NEWS, July 24, 2020, *A Black Trans Man Is Suing The NYPD And Correction Department For How They "Dehumanized" Him In Custody*, available at: https://www.buzzfeednews.com/article/clarissajanlim/black-trans-man-sued-nypd-treatment-in-custody

46.     At approximately 6:40 AM on June 3, 2022, NYPD Member Does #1 – 10 conducted a raid at 502 W 180th Street, Apartment # 5, located in the City, County, and State of New York, where all Plaintiffs except Plaintiff Janice Jones reside.

47.     Plaintiffs Sencere Jones, Janice Jones, Ciera McGee, D.J., I.J., S.M, and J.S. were present and asleep at the above location at the time of the raid and were awakened by Defendant NYPD Does breaking down the door to their home and entering with guns drawn.

48.     The names and identities of all the Defendant NYPD Does who entered the home are unknown at this time. All were in plain clothes. None displayed visible badges or provided their names upon request.

49.     Defendant NYPD Doe # 1 appeared to be short, white, and heavyset with dark facial hair.

50.     Defendant NYPD Doe # 2 appeared to be short, white, and thin with gray or salt and pepper hair.

51.     Defendant NYPD Doe # 3 appeared to be tall, white, and thin with salt and pepper hair. Defendant Does # 4 - 10 were also present.

52.     These Defendant NYPD Does terrorized the Plaintiffs during the unlawful and abusive raid of their home.

53.     At least two individuals among NYPD Does # 1 -10 ordered all Plaintiffs from the bedrooms and herded them into the living room of the apartment.

54.     Defendant NYPD Does refused to answer any questions about why the family was being detained and shouted profanities at Plaintiffs.

55.     At no point did the Defendant NYPD Does ever provide any Plaintiffs with a search warrant allowing them to search the home, and no Plaintiffs gave consent for the search to be conducted.

56.     Plaintiffs did not resist or refuse lawful orders issued by any Defendant NYPD Does. Plaintiffs were unarmed and posed no threat to Defendant NYPD Does.

57.     Plaintiff Sencere Jones merely requested to see the search warrant and otherwise asserted their rights, including their right to refuse consent for a search.

58.     At least two Defendant NYPD Does responded with hostility to Sencere's requests and assertions, stating, in sum and substance, that Plaintiff Sencere Jones should "watch [their] mouth."

59.     Two Defendant NYPD Does proceeded to make homophobic and transphobic comments about Plaintiff Sencere Jones' gender identity and sexual orientation. This included calling Plaintiff Sencere Jones, who is a nonbinary person, "Sweet N Low," a homophobic slur referring to men who engage in oral sex with men.

60.     Defendant NYPD Does threatened to place Plaintiff Sencere Jones under arrest if they continued to question the Defendant NYPD Does' authority and made additional derogatory comments toward Plaintiff Sencere Jones.

61.     Plaintiff Janice Jones, a former NYPD safety officer in her seventies, has multiple medical conditions. She requires access to her medications and frequent access to a bathroom as a result of both her conditions and medication side effects.

62.     During this ordeal, Plaintiff Janice Jones repeatedly begged the Defendant NYPD Does to allow her to go to the bathroom. They refused.

63.     Plaintiff Janice Jones was forced to urinate on herself and the floor of the home. She felt humiliated and afraid, and her grandchildren—including Sencere Jones—and great-grandchildren witnessed this abuse.

64.     During the raid of Plaintiffs' apartment, NYPD Members grabbed Plaintiff Janice Jones's wig and passed it between them, then dangled the wig in front of her. Plaintiff Janice Jones suffers from significant hair loss and was humiliated by NYPD Members' conduct.

65.     When Plaintiff Janice Jones requested that the NYPD Does return the wig to her, at least one Defendant NYPD Doe threw it across the room. Another Defendant NYPD Doe kicked the wig once it landed. Defendant NYPD Does mocked Plaintiff Janice Jones for needing to wear a wig and for crying due to their conduct.

66.     Defendant NYPD Does mocked Plaintiffs Ciera McGee, Sencere Jones, and Janice Jones for the size of the home, the number of occupants therein, and their income level.

67.     Defendant NYPD Does executing this raid permanently damaged the door and other property within the home. Plaintiffs, including Plaintiff Erica Jones, were forced to expend the costs of replacement and repair.

68.     Defendant NYPD Does seized approximately $900 that had been collected by Plaintiffs and their family members as part of a neighborhood fundraiser for a neighbor whose daughter had died. The cash was kept in a large envelope with condolence cards and was clearly marked. This cash was not vouchered and was not returned.

69.     Defendant NYPD Does also seized the plaintiffs' cell phones and other property unrelated to any criminal activity. These cell phones, belonging to Plaintiffs Sencere Jones, Erica Jones, and Ciera McGee, were not returned.

70.     Defendant NYPD Does placed Plaintiff Sencere Jones under arrest and transported them to the NYPD's Precinct in New York County. Plaintiff Sencere Jones spent approximately eight hours in custody before their release.

71.     Plaintiff Sencere Jones was falsely charged with Penal Law (PL) § 220.03, Criminal Possession of a Controlled Substance, by the New York County District Attorney's Office based

14

on false information provided by NYPD Does # 1 – 10 to the New York County District Attorney and the Court.

72.     PL § 220.03 is a charge for which New York State law mandates the issuance of an appearance ticket *in lieu of* custodial arrest. New York State Criminal Procedure Law § 150.20(1)(a), *et seq.*

73.     Plaintiff Sencere Jones has no criminal record and did not otherwise qualify for an exception to the mandatory Desk Appearance Ticket requirement.

74.     Nevertheless, NYPD Does # 1 – 10 placed Plaintiff Sencere Jones under custodial arrest.

75.     Plaintiff Sencere Jones was forced to return to Court at least twice—on or about June 22, 2022, for the initiation of legal proceedings and again on or about August 9, 2022, before the case against them was dismissed by the New York County District Attorney.

76.     The case against Plaintiff Sencere Jones was dismissed in its entirety on or about September 22, 2022.

77.     Defendants' conduct has caused significant damages to Plaintiffs, and the full extent of their injuries is not yet known.

78.     Defendants caused Plaintiff Sencere Jones to suffer anxiety, pain, deprivation of freedom, damage to their reputation, post-traumatic stress, depression, deprivation of property, interference with the enjoyment and use of their home, and significant fear and emotional anguish. The full extent of their injuries is not yet known.

79.     Defendants caused Plaintiff Janice Jones to suffer anxiety, pain, humiliation, deprivation of freedom, post-traumatic stress, depression, the exacerbation of medical conditions and symptoms, deprivation of property, and significant fear and emotional anguish. Defendants'

conduct has caused Plaintiff Janice Jones profound mental suffering requiring additional medical intervention. The full extent of her injuries is not yet known.

80.     Defendants caused Plaintiff Ciera McGee to suffer anxiety, post-traumatic stress, depression, deprivation of property, interference with the enjoyment and use of her home, and significant fear and emotional anguish. The full extent of her injuries is not yet known. Defendants further caused Plaintiff S.M., Plaintiff Ciera McGee's infant child, a toddler at the time of this raid, to suffer from anxiety and fear.

81.     Defendants caused Infant Plaintiff D.J. to suffer from fear, anxiety, emotional anguish, and post-traumatic stress. The full extent of his injuries is not yet known.

82.     Defendants caused Infant Plaintiff I.J. to suffer from fear, anxiety, emotional anguish, and post-traumatic stress. The full extent of his injuries is not yet known.

83.     Defendants caused Infant Plaintiff J.S. to suffer from fear, anxiety, emotional anguish, and post-traumatic stress. The full extent of her injuries is not yet known.

84.     Infant Plaintiffs D.J., I.J., and J.S. recall the incident vividly and continue to express negative effects on their emotional wellbeing, including ongoing anxiety related to loud noises and visitors at the door to their home, and experience an ongoing fear of future interactions with the police.

85.     Defendants caused Plaintiff Erica Jones to suffer from deprivation of property, interference with the enjoyment and use of her home, and anxiety. The full extent of her injuries is not yet known.

86.     Plaintiffs now bring the instant case before this Court.

## FIRST CLAIM FOR RELIEF

### Unlawful Search and Seizure

***Against All Defendants Pursuant to <u>42 U.S.C. § 1983</u> for Defendants' Violations of Plaintiffs' Rights Under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution***

87.     Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

88.     Defendants' seizure of the Plaintiffs herein was done without any judicial warrant authorizing them to seize any Plaintiffs, was unreasonable, and was done without privilege or lawful justification.

89.     Plaintiffs did not consent and were conscious of their confinement by Defendants.

90.     Defendants did not have individualized probable cause to seize, detain, or arrest Plaintiff Sencere Jones.

91.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

92.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SECOND CLAIM FOR RELIEF

### Excessive Force

***Against All Defendants Pursuant to <u>42 U.S.C. § 1983</u> for Defendants' Violations of Plaintiffs' Rights Under the Fourth and Fourteenth Amendments to the United States Constitution***

93.     Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

94.     Defendants' use of force against Plaintiffs was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted Defendants.

95.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

96.     The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## THIRD CLAIM FOR RELIEF

### Violations of Plaintiffs' Substantive Due Process Rights

***Against All Defendants Pursuant to 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution***

97.     Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

98.     Defendants City, Defendant Adams, and Defendant Sewell designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in seizing Plaintiffs and subjected Plaintiffs to the violations of their Due Process rights described elsewhere herein.

99.     Defendants collectively and individually denied and/or frustrated Plaintiffs' Due Process rights and deprived Plaintiffs of liberty and property without due process of law.

100.     Defendants' conduct—including the unlawful arrest of Plaintiff Sencere Jones, fabricating evidence against them, and using homophobic language to humiliate them in the presence of their family—is so appalling, harmful, and unconstitutional as to shock the contemporary conscience.

101.     As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; and caused Plaintiffs Sencere Jones and Janice Jones

bodily injury and pain; caused all Plaintiffs suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

102. The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

<u>**FOURTH CLAIM FOR RELIEF**</u>

**Municipal Liability**

***Against Defendants City, Adams, and Sewell Pursuant to <u>42 U.S.C. § 1983</u> and <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978) for Defendants' Violations of Plaintiffs' Rights Under the First, Fourth, and Fourteenth Amendments to the United States Constitution***

103. Plaintiffs hereby incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

104. Policymaker Defendant Adams and Defendant Sewell were responsible for implementing and enforcing policies and procedures on behalf of the Defendant City of New York.

105. The facts pleaded above describe the policies, practices, and customs Defendants subjected the Plaintiff to, including, but not limited to:

a. The use of homophobic, transphobic, and violent language and conduct during interactions with LGBTQIA+ New Yorkers, particularly Black nonbinary New Yorkers such as Plaintiff Sencere Jones;

b. Warrantless and/or coercive search and/or raid practices;

c. Excessive force and disrespectful conduct toward the residents of raided homes; and

d. The use of false arrests and/or false allegations to conceal underlying police misconduct.

106.     All of the wrongful acts or omissions complained of herein were carried out by the individual named and unnamed police officer defendants pursuant to:

    a.   Formal policies, rules, and procedures of Defendant City;

    b.   Actions and decisions by Defendant City's policymaking agents including, but not limited to, Defendant Adams and Defendant Sewell;

    c.   Customs, practices, and usage of the NYPD that are so widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant City, Defendant Adams, Defendant Sewell, and other policymaking officials;

    d.   Defendant City's deliberate indifference to Plaintiffs' rights secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution, as evidenced by the City's failures, and the failures of the City's policymaking agents, to train, supervise, and discipline NYPD officers, despite full knowledge of the officers' wrongful acts, as described herein.

## FIFTH CLAIM FOR RELIEF

### False Arrest

***Against Defendants Adams, and Sewell Pursuant to 42 U.S.C. 1983 and Plaintiffs' rights Under the Fourth and Fourteenth Amendments to the United States Constitution***

107.     Plaintiffs hereby incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

108.     Defendants unlawfully restricted Plaintiffs' movement and deprived Plaintiff Sencere Jones of their liberty without a lawful warrant and without probable cause.

109.    The facts available to the NYPD Defendants at the time of Plaintiff's arrest failed to support the charge against them. Nevertheless, Defendants unlawfully arrested and detained Plaintiff.

110.    Defendants intentionally confined Plaintiff without cause, warrant, or privilege to do so. Plaintiff was conscious of this confinement and did not consent to it.

111.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

112.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### SIXTH CLAIM FOR RELIEF

**Excessive Detention**

***Against All Defendants Pursuant to 42 U.S.C. 1983 and Plaintiffs' rights Under the Fourth and Fourteenth Amendments to the United States Constitution***

113.    Plaintiffs hereby incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

114.    Plaintiffs were detained by the Defendants throughout the execution of the unlawful search.

115.    Plaintiff Sencere Jones was additionally held in custody for approximately eight (8) hours by NYPD Defendants without justification or cause.

116.    This detention violated Plaintiffs' right to be free from continued detention and was predicated upon false allegations by NYPD Defendants.

117.    Defendants' conduct against Plaintiff Sencere Jones was further prohibited by New York State law, including CPL § 150.20(1)(a).

118.    Defendants' conduct in continuing to detain Plaintiff Sencere Jones was motivated by Defendants' ill will and/or in an attempt to gather additional evidence to justify Plaintiff's arrest and/or delay for delay's sake.

119.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

120.    Accordingly, Plaintiff is entitled to the damages requested in this Complaint.

## SEVENTH CLAIM FOR RELIEF

### Malicious Prosecution

***Against All Defendants Except Defendant Molina Pursuant to 42 U.S.C. 1983 and Plaintiffs' rights Under the Fourth and Fourteenth Amendments to the United States Constitution***

121.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

122.    Defendants instituted or caused the claim against Plaintiff Sencere Jones to be instituted without any probable cause. Defendants provided false information to further the criminal prosecution of Plaintiff Sencere Jones.

123.    Defendants' motive in instituting the suit was malicious, and the prosecution of Plaintiff Sencere Jones was terminated in their favor when the case against them was dismissed on or about September 22, 2022.

124.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their liberty and their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain,

suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend

costs and expenses; and/or otherwise damaged and injured Plaintiffs.

125.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or

reckless, and was of such a nature that punitive damages should be imposed against them.

## EIGHTH CLAIM FOR RELIEF

### Equal Protection and Selective Enforcement

***Pursuant to <u>42 U.S.C. § 1983</u> for Defendants' Violations of Plaintiff's Rights Protected
Under the Fourteenth Amendment to the United States Constitution***

126.    Plaintiff incorporates by reference the allegations set forth in all preceding and

following paragraphs as if fully set forth herein.

127.    As discussed elsewhere herein, Defendant City, Defendant Adams, and Defendant

Sewell designed and/or implemented policies and practices pursuant to which those Defendants

who ordered, effected, and otherwise participated in detaining Plaintiffs thus subjected Plaintiffs

to the above-described violations of Plaintiffs' Equal Protection rights.

128.    Defendants treated Plaintiffs differently than other similarly-situated individuals,

including by subjecting Plaintiff Sencere Jones to abuse due to their race, gender identity, and/or

their sexual orientation.

129.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of

their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering,

psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and

expenses; and/or otherwise damaged and injured Plaintiffs.

130.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or

reckless, and was of such a nature that punitive damages should be imposed against them.

## NINTH CLAIM FOR RELIEF

### First Amendment Retaliation and Impermissible First Amendment Restriction

*Against All Defendants Except Defendant Molina Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiffs' rights Under the First and Fourteenth Amendments to the United States Constitution*

131.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

132.    Defendants imposed restrictions on such protected speech and/or conduct that violated Plaintiffs' First Amendment rights, including, but not limited to, in unlawfully seizing and excessively detaining Plaintiff Sencere Jones, in subjecting Plaintiffs to excessive force, in selectively enforcing laws and regulations against Plaintiffs, in subjecting Plaintiffs to Defendants' harmful policies, and in otherwise violating Plaintiffs' rights and engaging in the acts and omissions complained of herein.

133.    In addition to being retaliatory, the restrictions Plaintiffs complain of herein, which Defendants imposed upon Plaintiffs' First Amendment rights to participate in, observe, and/or stand nearby speech, conduct, association, and/or other expressive activities protected by the First Amendment on the streets, were themselves regulations on Plaintiffs' protected conduct that:

a.    Were viewpoint discriminatory and/or otherwise not content-neutral, and were not necessary, and precisely tailored, to serve compelling governmental interests, and/or were not the least restrictive means readily available to serve those interests; or, alternately,

b.    Were content-neutral, but lacked narrow tailoring to serve a significant governmental interest, in that they burdened substantially more protected speech and/or conduct than necessary to serve those interests, and/or failed to provide ample alternatives for Plaintiff's protected expression, including in that Plaintiff's abilities to communicate effectively were threatened; and/or

c.    Afforded Defendants unbridled or otherwise inappropriately limited discretion to limit or deny Plaintiffs' abilities to engage in protected conduct (also raising constitutionally significant Due Process-based vagueness and/or overbreadth concerns); and/or

d.      Amounted to the imposition of strict liability on Plaintiffs for engaging in protected speech and/or expression.

134.    Defendants further engaged in retaliation against Plaintiffs for engaging in speech and/or conduct protected by the First Amendment, including Plaintiff Sencere Jones' gender presentation, their assertion of their right to withhold consent for a search of their home, and their questions regarding Defendants' conduct, and against all other Plaintiffs for their association with Plaintiff Sencere Jones and their refusal to grant consent to the search of their home.

135.    Defendants engaged in the acts and omissions complained of herein in retaliation for Plaintiffs' protected speech and/or conduct.

136.    Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiffs from continuing to engage in such protected speech and/or conduct.

137.    Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiffs from engaging in similar protected conduct in the future and did in fact chill Plaintiffs' exercise of these rights.

138.    Additionally, as discussed elsewhere herein, Defendant City designed and/or implemented policies and practices pursuant to which those Defendants who implemented them subjected Plaintiffs to violations of their First Amendment rights.

139.    Upon information and belief, Defendants engaged in the acts and omissions complained of herein with respect to Plaintiffs' First Amendment-based claims—including the related municipal liability claims involving the adoption of policies, practices, and/or customs and/or related failures to train, supervise, and/or discipline—with malice.

140.    Upon information and belief, Defendants engaged in the acts and omissions complained of herein with respect to Plaintiffs' First Amendment retaliation claims—including the related municipal liability claims involving the adoption of policies, practices, and/or customs

and/or related failures to train, supervise, and/or discipline—in response to the perceived viewpoint and/or message expressed by Plaintiffs.

141.    Upon information and belief, Defendants did not subject other others similarly situated to Plaintiffs in terms of their conduct and/or its potential public ramifications to the conduct, policies, practices, and/or customs complained of herein.

142.    Plaintiffs suffered actual chill, including in that Plaintiffs were prevented and/or deterred from or impeded in participating in protected conduct on the date of and after the incident; and/or suffered adverse effects on their protected speech and/or conduct; and/or otherwise suffered some concrete harm(s).

143.    Additionally, as discussed elsewhere herein, Defendant City designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in detaining and assaulting Plaintiffs subjected Plaintiffs to the violations of their First Amendment rights described elsewhere herein.

144.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

145.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiffs of their federal, state, and/or other legal rights; caused Plaintiffs bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiffs to expend costs and expenses; and/or otherwise damaged and injured Plaintiffs.

146.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### TENTH CLAIM FOR RELIEF

### Failure to Train and/or Supervise

***Against Defendants City, Adams, and Sewell Pursuant to <u>42 U.S.C. § 1983</u> and <u>Monell v.</u>***
***<u>Department of Social Services</u>, 436 U.S. 658 (1978)***

147.     Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

148.     Defendant City, and its agents Defendant Adams and Defendant Sewell, failed to train and supervise the Defendant NYPD Members.

149.     All individual Defendants were employees and/or agents of Defendant City and were acting within the scope of their employment at the time of the conduct giving rise Plaintiffs' injuries.

150.     Defendants knew or should have known that Defendant NYPD Members were likely to violate the constitutional rights of individuals in their custody.

151.     Defendants know that NYPD Members are certain to regularly encounter situations such as those described herein—including searches of private residences and interactions with nonbinary and/or LGBTQIA+ New Yorkers and members of sensitive populations, including infants, the elderly, and/or the medically fragile—through the course of their employment.

152.     Defendants knew that there is a history of wrongful conduct in these scenarios by NYPD Members.

153.     Defendants also knew that individual NYPD Defendants have a documented history of adverse credibility findings and/or abusive conduct against individuals they encountered during their employment.

154.     Defendants further knew that training and/or supervision could ameliorate the potential harms of constitutional violations in these scenarios, including civil rights violations, coerced confessions, and physical and emotional injuries.  Nevertheless, Defendants failed to train

its agents and/or employees regarding their conduct during the scenarios described herein and further failed to supervise its agents and/or employees when engaged in high-risk contact.

155.    By failing to train and supervise Defendant NYPD Members, these Defendants exhibited a conscious disregard and/or deliberate indifference for the risks posed by NYPD members' conduct absent adequate training and supervision.

## ELEVENTH CLAIM FOR RELIEF

### Negligent Screening, Hiring, and Retention

**Against Defendants City, Adams, and Sewell Pursuant to _42 U.S.C. § 1983_ and _Monell v._**
**_Department of Social Services_, 436 U.S. 658 (1978)**

156.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

157.    All Defendants were employees and/or agents of Defendant City and were acting within the scope of their employment at the time of the conduct giving rise to Plaintiffs' injuries.

158.    Defendant City and its agents Defendant Adams and Defendant Sewell knew that the individual Defendants had a propensity for the conduct giving rise to Plaintiffs' injuries.

159.    Defendants failed to adequately screen, hire, or retain employees in consideration of such employees' recognizable propensity for harm.

160.    The individual Defendants' conduct was both predictable to and preventable by policymaker Defendants.

161.    Rather than removing or disciplining NYPD members who have provided non-credible testimony to courts, history of excessive force, and/or biased-based policing, policymaker Defendants have continued to employ and empower such NYPD members to continue inflicting predictable harm on individuals they interact with, including Plaintiffs. Such conduct is so foreseeable as to rise to the level of deliberate indifference.

## TWELFTH CLAIM FOR RELIEF

**Breach of Duty to Protect**

***Against All Defendants Pursuant to 42 U.S.C. § 1983***

162.   Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

163.   The Defendant City, by its agents, had a special duty to Plaintiffs and possessed sufficient knowledge that inaction would lead to the harms suffered by Plaintiffs.

164.   Defendants witnessed and/or knew of the harmful conduct of fellow Defendants and merely observed and/or unreasonably ignored such conduct against Plaintiffs.

165.   Defendant City and its employees and/or agents breached the existing duty to protect Plaintiff, and such inaction enabled and/or facilitated and/or exacerbated the harms caused by Defendants' conduct and suffered by Plaintiffs.

## THIRTEENTH CLAIM FOR RELIEF

**Violations of New York State and/or New York City Law**

***Pursuant to the New York State Constitution and New York State Common Law***

166.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

**Respondeat Superior**

167.   The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

**Violations of the New York State Constitution**

168.    Defendants, acting under color of law, violated Plaintiffs' rights pursuant to Article I, §§ 6, 8, 9, 11, and 12 of the New York State Constitution.

169.    A damages remedy here is necessary to effectuate the purposes of Article I, §§ 6, 8, 9, 11, and 12 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiffs' rights under those sections.

**Unlawful Search and/or Seizure**

***Pursuant to the New York State Constitution and the <u>New York City Administrative Code Chapter 8, Title 8, § 8-801 et seq.</u>***

170.    The NYPD Defendants are covered individuals as defined in <u>NYC Admin. Code Ch. 8, Title 8, § 8-801</u>.

171.    As described above, the Defendants violated Plaintiffs' right to be free from "unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure."

172.    The NYPD Defendants and their employer, including the Defendant City, are liable to Plaintiffs for this conduct.

173.    Defendants may not invoke the defense of qualified immunity.

174.    Plaintiff is entitled to compensatory and punitive damages, attorney's fees and costs, and an order restraining the Defendants from engaging in further violative conduct.

**False Imprisonment and Unreasonable Detention**

175.    By the actions described above, the Defendants described above did falsely detain Plaintiffs within the meaning of New York common law without reasonable or probable cause,

illegally and without a written warrant, and without any right or authority to do so. Plaintiffs were conscious of the confinement, and it was without their consent.

### Intentional and Negligent Infliction of Emotional Distress

176.    By the actions described above, Defendants engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to Plaintiffs.

177.    The acts and conduct of the Defendants were the direct and proximate cause of injury and damage to the Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

178.    As a result of the foregoing, Plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

### Malicious Prosecution and Fabrication of Evidence

179.    Defendants provided false information to initiate criminal proceeding against Plaintiff Sencere Jones and undertook their arrest without probable cause. Defendants demonstrated actual malice against Plaintiff.

180.    The criminal prosecution against Plaintiff terminated in their favor when the New York County District Attorney's Office dismissed all charges against Plaintiff on or about September 22, 2022.

### Negligent Training, Retention, Hiring and Supervision

181.    Upon information and belief, Defendant City supervised and trained the police officials described above and did so in a negligent manner resulting in the harms described.

182.    At all times relevant herein, Defendants were employed by, and acting in the scope of their employment with, Defendant City. Defendant City should have known that Defendant NYPD Members had a propensity for the conduct causing Plaintiffs' injuries.

183.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

**Conversion**

184.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

185.    Defendants interfered with and/or eliminated their right to enjoy and/or access and/or use their tangible property, including through damage and/or permanent deprivation of Plaintiffs' property.

186.    Defendants inconvenienced Plaintiffs and forced them to expend costs as a result of this interference and damage.

187.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

**DEMAND FOR A JURY TRIAL**

Plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

**CONCLUSION AND DEMAND FOR JUDGMENT**

WHEREFORE, Plaintiffs demand judgment against the individual Defendants and the City of New York as follows:

i.      Actual and punitive damages against the individual Defendants in an amount to be determined at trial;

ii.     Actual damages in an amount to be determined at trial against the City of New York;

iii.    Policy change;

iv.     Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter alia,* 42 U.S.C. §1988, New York State Civil Rights Law, the New York City Administrative Code, and New York State common law; and

v.      Such other relief as the Court deems just and proper.

Dated:      Brooklyn, New York
            September 5, 2023

                                    **KAISHIAN & MORTAZAVI LLC**

                                    By: _____
                                    MARYANNE K. KAISHIAN
                                    **KAISHIAN & MORTAZAVI LLC**
                                    **Attorneys for Plaintiffs**
                                    55 Washington Street, Ste. 508
                                    Brooklyn, New York 11201
                                    T: (347) 662-2421
                                    E: mk@kaishianlaw.com

## ATTORNEY VERIFICATION

I, MARYANNE K. KAISHIAN, an attorney duly admitted to practice before the Southern District of New York, affirm the following to be true under the penalties of perjury:

1.      I am the attorney of record for the Plaintiffs.

2.      I have read the annexed Verified Complaint and know the contents thereof, and the same are true to my knowledge, except those matters therein which are alleged upon information and belief, and as to those matters, I believe them to be true.  My beliefs, as to those matters therein not stated upon knowledge, are based upon facts, records, and other pertinent information contained in my files.

3.      I make this verification because Plaintiffs do not reside in the County (Kings) where I maintain my office.

Dated:  Brooklyn, New York
      September 5, 2023

By: _____
Maryanne K. Kaishian, Esq.
**Kaishian & Mortazavi LLC**
**Attorneys for Plaintiffs**
55 Washington Street, Ste. 508
Brooklyn, New York 11201
T: (347) 662-2421
E: mk@kaishianlaw.com